UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MELVIN BROOKS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-855** |
| **DR. GORE, ET AL.** | **SECTION "I" (3)** |

**REPORT AND RECOMMENDATION**

Plaintiff, Melvin Brooks, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983. He named as defendants Dr. Gore, Dr. Hamm, Dr. Dileo, Dr. Gautreaux, Ms. Pounds, Major C. Jones, Jr., Warden G. Metoyer, and Sheriff Marlin Gusman. In this lawsuit, plaintiff claims that his constitutional rights were violated when the defendants (1) failed to provide him with adequate medical care and (2) forced him to participate in "yard call."

The defendants have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[1] Plaintiff opposes that motion.[2]

I.  Standards for Summary Judgment

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the

---

[1]   Rec. Doc. 28.

[2]   Rec. Doc. 36.

mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

## II. Medical Claim

Defendants argue that the medical records in this case disprove plaintiff's claim that his medical care failed to meet constitutional standards. As the defendants correctly note, inadequate

medical care rises to the level of a federal constitutional violation only if the prisoner's *serious medical needs* are met with *deliberate indifference* on the part of penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).  In the instant case, plaintiff complains of two medical needs:  pain from an injured eye and pain in an arthritic knee and ankle.  In their motion, the defendants do not address whether these conditions constituted serious medical needs.  However, this Court need not determine whether the conditions were sufficiently serious to trigger constitutional protections because, as the defendants correctly argue, plaintiff's medical needs were not met with deliberate indifference.

Regarding the deliberate indifference requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001)  (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary and

wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

The medical records in the instant case establish the defendants did not refuse to treat plaintiff, ignore his complaints, or intentionally treat him incorrectly. On the contrary, the records show that the defendants were responsive to plaintiff's numerous complaints. Regarding his eye injury, the records reflect that plaintiff was brought to the jail's medical clinic on December 9, 2008, after he was attacked by other inmates. After an examination revealed an apparent torn cornea, plaintiff was given Motrin, had a patch applied to his eye, and was sent to University Hospital for emergency care.[3] At the hospital, he underwent surgery to reattach his cornea.[4] When he was discharged on December 13, 2008, he returned to the prison and was assigned to the jail's medical tier.[5] Over the next several months, he continued to receive treatment both inside and outside of the facility. For example, the prison medical staff prescribed various eye drops[6] and Ultram,[7] and plaintiff was sent to outside specialists for follow-up eye care.[8] Similarly, the records reflect that

---

[3] Rec. Doc. 27-4, pp. 1-2.

[4] Rec. Doc. 27-4, pp. 3-4.

[5] Rec. Doc. 27-4, p. 2.

[6] Plaintiff was prescribed Vigamox (moxifloxacin ophthalmic solution), an antibiotic eye drop. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000299. He was likewise prescribed Pred Forte (prednisolone acetate), a corticosteroid eye drop. http://www.drugs.com/cdi/pred-forte-drops.html. He was also prescribed Atropine Ophthalmic, an eye drop "to relieve pain caused by swelling and inflammation of the eye." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682487.html.

[7] Ultram (tramadol) "is used to relieve moderate to moderately severe pain." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000960.

[8] Rec. Doc. 27-4, pp. 2, 5, and 19-33.

plaintiff was seen repeatedly for his complaints of arthritis and was prescribed numerous medications for pain, including Naprosyn,[9] Indocin,[10] Flexeril,[11] Tylenol, and Ibuprofin.[12] These medical records disprove any allegation that plaintiff's medical needs were met with deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). Moreover, the Court expressly notes that the mere fact that plaintiff allegedly continued to experience pain despite treatment is insufficient to state a constitutional claim. Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); see also Spruill v. Gillis, 328 Fed. App'x 797, 801 (3rd Cir. 2009).

In his opposition to the motion, plaintiff acknowledges that he received care both at the jail's medical department and from outside specialists. He further acknowledges that he was prescribed and received medication. That said, he essentially complains that the care he received was slipshod at best, with outside appointments sometimes not scheduled in a timely manner, with medications not always filled or administered in the manner prescribed, and with occasional misdiagnoses. However, even if that is true, it does not rise to the level of a constitutional violation. The

---

[9] Naprosyn (naproxen) is used to relieve pain, tenderness, swelling, and stiffness caused by arthritis. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000526.

[10] Indocin (indomethacin) is used to relieve moderate to severe pain, tenderness, swelling, and stiffness caused by arthritis. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000524.

[11] Flexeril (cyclobenzaprine) is a muscle relaxant. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000699.

[12] Rec. Doc. 27-4, p. 8; see also Rec. Doc. 16-9, pp. 20-25 and 27; Rec. Doc. 16-10, pp. 1 and 7-10; Rec. Doc. 16-11, pp. 8-11, 13, 16, and 20-22; Rec. Doc. 16-12, pp. 3-5.

constitution does not require that prisoners receive optimal care, and the fact that a prisoner's medical treatment "may not have been the best money could buy" is insufficient to establish a federal violation. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); see also Gobert, 463 F.3d at 349 ("deliberate indifference exists wholly independent of an optimal standard of care"); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available). Further, the United State Constitution simply does not protect inmates from acts of medical negligence or malpractice, which are never alone sufficient to state a federal claim for inadequate medical care. Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004). Rather, claims of negligence or malpractice are *tort claims* for the *state courts*, not *constitutional claims* for a *federal court*. See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Cerna, 2004 WL 42602, at *2.

Simply put, the determinative issue here is not whether the medical treatment plaintiff received was subpar or whether he was satisfied with his care; instead, it is only whether his medical needs were met with *deliberate indifference*. Because it is evident that there was no deliberate indifference in this case, the medical claims should be dismissed.

### III. Mandatory Yard Call

Plaintiff also claims that his rights were violated when he was required to go outdoors for yard call when he would have preferred to stay inside. He explains:

> Now yard call is define as each tier in a particular building take turns going out on what can only be describe as a concrete basketball court. Now the only activity that

an inmate can participate in is basketball. Now some inmates choose not to participate, but stay on the tier and do law work, read, study for GED, or just take advantage of that quiet time. But that choice has been taken away.[13]

Even if that is true, it does not amount to a constitutional violation. The federal constitution does not require prison officials to accommodate each prisoner's individual preferences on such matters. Absent an allegation that the mandatory yard call posed a substantial risk of serious harm to him, plaintiff simply has not stated a constitutional claim. See, e.g., Boyce v. Moore, 314 F.3d 884, 891 (7th Cir. 2002) (holding that a prisoner's "subjective desire not to go to the yard, without further explanation, was not sufficient to excuse his attendance"). Accordingly, this claim should likewise be dismissed.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that defendants' motion for summary judgment be **GRANTED** and that plaintiff's claims be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[13] Rec. Doc. 1, p. 7.

a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[14]

New Orleans, Louisiana, this twenty-ninth day of November, 2010.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[14] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.